UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID H. TRAUTENBERG

       Plaintiff,

   v.

SUSAN HUTSON, SHERIFF, ORLEANS PARISH

       Defendant.

CIVIL NO. 2:23-CV-6525

## **COMPLAINT**

Plaintiff David H. Trautenberg asserts his causes of action against defendant Susan Hutson, the Sheriff of Orleans Parish, both in her official and individual capacities, as follows:

## **THE PARTIES**

1.    Plaintiff is David H. Trautenberg.  He is 65 years old.  He is a Colorado citizen who is domiciled and resides in Colorado Springs.

2.    Defendant is Susan Hutson, the Sheriff of Orleans Parish, in both her official and individual capacities.  Hutson is a Louisiana citizen who resides in New Orleans.

## **JURISDICTION AND VENUE**

3.    The Court has subject-matter jurisdiction over all of plaintiff's claims pursuant to 28 U.S.C. § 1332 (diversity) because (1) all parties are completely diverse and (2) the value of plaintiff's claims, both individually and collectively, exceeds $75,000 exclusive of interests and costs.  In support of this allegation, Trautenberg alleges that just his claim for lost back wages exceeds $75,000, and considering his additional

1

claims for emotional distress, mental anguish, loss of enjoyment of life, loss of reputation, and out-of-pocket compensatory damages, the value of his claims well exceeds over $75,000.

4.  The Court also has independent, subject-matter jurisdiction over plaintiff's federal-law claims in this matter pursuant to 28 U.S.C. § 1331 (federal question) and the Fourteenth Amendment of the United States Constitution through 42 U.S.C. § 1983.  Concerning the Court's federal-question jurisdiction, the Court also possesses supplemental jurisdiction over plaintiff's Louisiana state-law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to plaintiff's federal-law claims that they form part of the same case or controversy as more particularly set out herein.

5.  The Court has personal jurisdiction over Hutson because she is a Louisiana citizen and was present in Louisiana at the time this lawsuit was filed.

6.  Venue for Trautenberg's claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of Hutson's unlawful acts giving rise to this lawsuit, as well as Trautenberg's resulting injuries and damages, occurred within this judicial district (specifically, Orleans Parish).

7.  Alternatively, venue for Trautenberg's claims is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Hutson resides in this judicial district (specifically, Orleans Parish).

## FACTS

8.      Susan Hutson was elected the Orleans Parish Sheriff in 2021.  She assumed office on or about May 2, 2022.

9.      Hutson holds the Office of the Orleans Parish Sheriff, and the prison and law enforcement bureaucracy Hutson administers is called the "Orleans Parish Sheriff's Office" (collectively, throughout this complaint, the "OPSO").

10.     In her capacity as Sheriff, Hutson is the final policymaker, decision-maker, and appointing authority for OPSO.  Pursuant to her written policies, only Hutson has authority to hire or fire one of her employees.  She has not delegated that authority to anyone else.

11.     Hutson hired Trautenberg as her Chief Financial Officer on or about June 13, 2022.

12.     Hutson hired Trautenberg after conducting a national search for the best qualified candidate.  Hutson told Trautenberg she expected him to serve for the length of her entire administration.

13.     Hutson fired Trautenberg without any cause whatsoever on or about March 27, 2023.

14.     As CFO, Trautenberg's job responsibilities were to manage and ensure the successful finance, accounting, budgeting, payroll, auditing and credit union operations for the Orleans Parish Sheriff's Office. Additionally, Trautenberg served as an assistant sheriff and senior member of Hutson's leadership team.

15.     At all times, Trautenberg discharged his duties with excellence.

16.     Hutson utilized a progressive disciplinary policy for her employees.

17.     Trautenberg was never disciplined prior to his termination.

18.     Trautenberg has never given any cause for his termination.

19.     On Friday, March 24, 2023, Hutson told Trautenberg she intended to fire him on Monday, March 27, unless he resigned.  Trautenberg asked why.  Hutson told him "you've done great work," but Hutson said she wanted to "move in a different direction."

20.     Trautenberg alleges Hutson's comment that she wanted to "move in a different direction" is pretext to cover up for illegal retaliation and discrimination.

21.     Trautenberg alleges Hutson fired him in retaliation for refusing to participate in or cover up violations of Louisiana state law, specifically, "misuse" of public funds under La. Rev. Stat. Ann. § 42:1461(A); receipt or solicitation of prohibited "gifts" under La. Rev. Stat. Ann. § 42:1115(A); "simple assault" under La. Rev. Stat. Ann. § 14:38; and "simple battery" under La. Rev. Stat. Ann. § 14:35.

22.     In support of his allegation of retaliation for whistleblowing against the "misuse" of public funds under La. Rev. Stat. Ann. § 42:1461(A), Trautenberg further alleges:

- Hutson had no cause to fire Trautenberg, and she told him he had done "great work" for her the day of his termination meeting.

- Under Louisiana state law, an elected sheriff may not "misappropriate, misapply, convert, misuse, or otherwise wrongfully take any funds, property, or other thing of value belonging to or under the custody or control" of the Office

of Sheriff.  La. Rev. Stat. Ann. § 42:1461(A).

- During the 2023 Carnival season, OPSO Assistant Sheriff Kristen Morales told Trautenberg she intended to ask Hutson to authorize renting multiple hotel rooms for multiple nights before Mardi Gras day so that OPSO employees could sleep in the French Quarter. Trautenberg objected to the proposal based on misuse of public funds, indicating that the Orleans Justice Center's administrative offices had enough space, bedding, and shower facilities to accommodate as many overnight employees and deputies as necessary. Trautenberg reiterated to Hutson that the Mardi Gras Cooperative Endeavor Agreement ("CEA") between OPSO and the City of New Orleans explicitly disallowed the proposed expenditure.

- Morales asked Hutson to authorize the renting of hotel rooms with public OPSO funds anyway.  Hutson approved.

- On February 14, 2023, Hutson personally authorized OPSO to pay for at least 7 hotel rooms at the Omni Royal Orleans hotel, each room for 8 nights, for a total cost of $8,960.00.  Hutson's directive bypassed then-OPSO procedure for procuring hotel rooms.

- The rooms were reserved for at least the following OPSO employees: Kristen Morales, Silas Phipps, Briankisha Toledano Crusto, Earl Fox, Corey Amacker, Laura Veazey, and John Scott.

- Trautenberg learned that Hutson approved many more hotel rooms at other hotels to be rented during the carnival season. As CFO and OPSO's senior-

most finance professional responsible for audit, and consistent with his stated job responsibilities, Trautenberg began an internal audit investigation into the reimbursability or misuse of public OPSO funds to pay for these hotel rooms.

- Based on Trautenberg's preliminary investigation, at least some of these rooms were not actually occupied or used by OPSO employees, directly causing the misuse or misappropriation of public funds in violation of state law. Trautenberg also learned information suggesting that that at least some OPSO employees planned to give rooms away to family or friends.

- Based on Trautenberg's preliminary investigation, there was no legitimate business or law enforcement purpose for Hutson to rent these rooms, directly causing the misuse or misappropriation of public funds in violation of state law.

- Based on Trautenberg's preliminary investigation, Hutson knew or should have known that at least some of the hotel rooms were not actually used by any OPSO employees, but she authorized payment of public funds for the rooms anyway, in violation of state law.

- Based on Trautenberg's preliminary investigation, Hutson knew or should have known that renting these rooms with public OPSO money was a misappropriation, misapplication, or misuse of public funds, but she authorized payment of public funds for the rooms anyway, in violation of state law.

- Trautenberg told Hutson he was investigating the reimbursability or misuse

of public funds by OPSO to rent these rooms without legitimate reason. Trautenberg also told Hutson he had received information suggesting that Morales had given her hotel room away to her parents for their own personal use. Hutson immediately told Trautenberg to stop his investigation and, if he did not, she would fire him for insubordination. Trautenberg told Hutson he objected to the misuse of public funds, and his responsibility as CFO required him to complete his internal audit investigation.

- Approximately the next day, Hutson's Chief of Staff, John Williams, told Trautenberg to "stand down from any further investigation" into the use of public OPSO funds to pay for hotel rooms during the Carnival season. Williams told Trautenberg, "this is coming directly from the Sheriff or there's going to be consequences." Trautenberg told Williams he objected to the misuse of public funds, and his responsibility as CFO required him to complete his internal audit investigation.

- Approximately a few days later, Hutson told Trautenberg she intended to fire him on Monday, March 27, 2023, unless he resigned. Hutson provided Trautenberg no cause for her decision-making. The real reason Hutson fired Trautenberg was because he objected to the misuse or misappropriation of public funds and refused to participate in and cover up the violation of state law by stopping his internal audit investigation.

- Trautenberg alleges that, through discovery based on these allegations, plaintiff will prove Hutson did in fact violate La. Rev. Stat. Ann. § 42:1461(A)

and did in fact fire Trautenberg because he objected to, disclosed, and refused to participate in and cover up the violation of Louisiana state law.

23.     In support of his allegation of retaliation for whistleblowing against acceptance or solicitation of prohibited "gifts" under La. Rev. Stat. Ann. § 42:1115(A), Trautenberg further alleges:

- Hutson had no cause to fire Trautenberg, and she told him he had done "great work" for her the day of his termination meeting.

- In March 2023, Trautenberg learned that the Louisiana company LAK9 Securities LLC offered to pay OPSO a cash gift to offset the costs of the hotel rooms Hutson authorized to be rented with public OPSO funds during the Carnival season.  Hutson told Trautenberg she intended to accept the donation.

- As CFO, and consistent with his stated job responsibilities, Trautenberg began an inquiry into whether the cash donation was lawful under Louisiana state law.

- After review, Trautenberg learned that LAK9 was a recent OPSO vendor. Specifically, Trautenberg identified an invoice from LAK9 to OPSO dated April 28, 2021 requesting payment of $1,000 for a "1 Week [dog] Training Couse with Certification for Narcotics and Patrol." Additionally, Trautenberg learned a representative of LAK9 had recently solicitated OPSO through Assistant Sheriff Kristen Morales to purchase its canine services for use at the OJC.

- Trautenberg objected to the gift and disclosed the details of LAK9's prior relationship to OPSO Chief of Staff John Williams and General Counsel

Graham Bosworth. Trautenberg told Williams that Hutson could not lawfully solicit or accept a gift from a recent OPSO vendor. Williams told Trautenberg Hutson intended to accept the gift anyway.

- Approximately a few days later, Hutson fired Trautenberg without providing any cause. The real reason Hutson fired Trautenberg was because he objected to, disclosed, and refused to cover up Hutson's acceptance of a prohibited gift in violation of Louisiana state law.

- Trautenberg alleges that, through discovery based on these allegations, plaintiff will prove Hutson did in fact violate La. Rev. Stat. Ann. § 42:1115(A) by soliciting or accepting a prohibited cash gift and did in fact fire Trautenberg because he objected to, disclosed, and refused to participate in and cover up the violation of Louisiana state law.

24. In support of his allegation of retaliation for whistleblowing against "simple assault" and "simple battery" under La. Rev. Stat. Ann. §§ 14:38 and 14:35, Trautenberg further alleges:

- Hutson had no cause to fire Trautenberg, and she told him he had done "great work" for her the day of his termination meeting.

- Based on his observations and statements made to him by multiple high ranking OPSO executives, Trautenberg alleges Hutson had been or was engaged in a romantic relationship with her subordinate employee, Assistant Sheriff Kristen Morales.

- On January 31, 2023, Trautenberg, Morales, and several other OPSO

employees attended a mandatory POST-certification training class at the Orleans Parish Justice Center. At all times, Trautenberg and Morales were acting in the course and scope of their employment and located within the OPSO workplace.

- Morales became disruptive multiple times during the training meeting, and Trautenberg asked her to leave the training area so the class could proceed uninterrupted.

- Morales became irate and attacked Trautenberg by hurling a heavy bottle of water at his head. Morales intended to strike Trautenberg and hurt him, and to threaten Trautenberg by placing him in reasonable apprehension of being battered. The bottle did strike Trautenberg, and he was placed in reasonable apprehension of receiving the battery. Many witnesses saw Morales assault Trautenberg, including OPSO employees Laura Veazey, Astrid Birgden, and John Scott. After Morales assaulted Trautenberg, she left the training area. Trautenberg reported the assault and battery to Chief of Staff Williams and General Counsel Bosworth later that same evening.

- Bosworth asked Trautenberg if he intended to file a criminal complaint against Morales for assault or battery. Trautenberg indicated not at present, but he reserved his right to do so.

- On February 1, 2023, Trautenberg submitted an incident report concerning the assault and battery to Chief of Staff John Williams. Trautenberg requested an investigation into the matter. No investigation was conducted. At some point

thereafter, Morales confided in Hutson about the attack.  Hutson began to cover up Morales's attack.  On February 2, 2023, Trautenberg met with Hutson and complained again about Morales's assault and battery. Trautenberg indicated he and his finance staff felt unsafe around Morales, and requested that Hutson provide them with a safe work environment.  Hutson refused to investigate, hold Morales accountable, or provide Trautenberg and his staff with a safe work environment.

- On February 24, 2023, Hutson told Trautenberg not to discuss Morales's attack with anyone again, texting him: "Hey David. Please don't discuss the training academy matter with anyone in our organization. Especially not your subordinates. Thank you."  Trautenberg continued to object to Morales's assault and battery, and Trautenberg refused to cover up the attack by maintaining his silence. Trautenberg continued to ask that Morales be held accountable for her workplace assault and battery.

- Shortly thereafter, Hutson fired Trautenberg without providing any cause. The real reason Hutson fired Trautenberg was because he objected to, disclosed, and refused to cover up Morales's workplace assault and battery under Louisiana state law.  Trautenberg alleges Hutson was motivated to protect Morales, and to terminate Trautenberg for the purpose of protecting her, because of Hutson's romantic relationship with Morales.

- Trautenberg alleges that, through discovery based on these allegations, plaintiff will prove Hutson, in her official capacity as Trautenberg's employer,

and through the acts of Assistant Sheriff Kristen Morales while in the course and scope of her duties, did in fact violate La. Rev. Stat. Ann. § 42:1115(A) and did in fact fire Trautenberg because he objected to, disclosed, and refused to participate in and cover up the violation of Louisiana state law.

25.   In addition to any other allegation in this complaint, Trautenberg also alleges Hutson fired him because he is a man.  In other words, that Hutson would not have fired Trautenberg under identical circumstances if he were a woman.

26.   In support of his allegation of sex-based discrimination, Trautenberg also alleges:

- Trautenberg was well-qualified for his job.

- Hutson had no cause to terminate him.

- Hutson replaced Trautenberg in his financial duties with his former subordinate, an objectively lesser qualified woman named Elizabeth Boyer. Trautenberg alleges Boyer now performs, either in fact or for all practical purposes, his former work as chief financial officer.

- Based on Trautenberg's eyewitness observations, Hutson holds and displays general bias against men in the workplace in favor of women in the workplace.

27.   After his termination, Trautenberg was unable to find replacement employment in New Orleans or Louisiana. Instead, Trautenberg found re-employment in Colorado and was forced to permanently relocate there for work. Trautenberg is now domiciled in Colorado and resides in Colorado Springs.

28.   Trautenberg suffered significant lost wages, fringe benefits, and significant

out-of-pocket expenses because of Hutson's unlawful employment actions.

29.    Trautenberg suffered significant loss of reputation, loss of enjoyment of life, emotional distress, and mental anguish, because of Hutson's unlawful employment actions.

## CAUSES OF ACTION

### Count 1:    Retaliation under the Louisiana Whistleblower Statute against Sheriff Hutson in her official capacity

30.    David H. Trautenberg states a cause of action for retaliation and wrongful termination because of his protected whistleblower activities against Sheriff Hutson in her official capacity under the Louisiana Whistleblower Statute, codified at La. Rev. Stat. Ann. § 23:976 *et seq.*, based on the following adverse employment actions:

      (a)    Hutson's termination of Trautenberg's employment because of protected whistleblowing on or about March 27, 2023.

31.    Plaintiff reincorporates here all the factual and legal allegations of his complaint.

32.    A Louisiana employee "is protected under the Whistleblower Statute if (1) she advised [her employer] of a violation of law that was a workplace act or practice, (2) she objected to the illegal activity, and (3) she was retaliated against for doing so." *Sonnier v. Diversified Healthcare-Lake Charles, LLC*, 2022-420, p. 10-11 (La. App. 3 Cir. 4/26/23; 364 So.3d 1213, 1224.

33.    Trautenberg was an excellent employee hired by Hutson after conducting a competitive, national search.  Hutson intended Trautenberg to serve as her Chief Financial Officer for her entire elected term and told him so. Hutson never subjected

Trautenberg to discipline under her progressive discipline policy. On the day of their termination meeting, Hutson admitted Trautenberg had done excellent work for her and her administration.   Hutson gave Trautenberg no reason or cause for his termination.

34.     As alleged throughout this complaint, Hutson engaged in the "misuse" of public funds in violation of La. Rev. Stat. Ann. § 42:1461(A).   Hutson fired Trautenberg because he disclosed, objected to, and refused to participate in or cover up Hutson's misappropriation, misuse, or otherwise wrongful taking of public OPSO funds to pay for hotel rooms during the 2023 Carnival season without any legitimate business or law enforcement justification.   Hutson knew that at least some of the rooms were not used by OPSO personnel but approved spending public OPSO money to pay for them anyway.   Hutson knew or should have known that some OPSO employees gave away their rooms to family or friends but approved spending public OPSO money to pay for them anyway.   Hutson fired Trautenberg to stop his legitimate complaints and internal audit investigation into the matter pursuant to his stated job responsibilities.

35.     Additionally or alternatively, as alleged throughout this complaint, Hutson solicited or accepted a prohibited cash gift in violation of La. Rev. Stat. Ann. § 42:1115(A).   Hutson fired Trautenberg because he disclosed, objected to, and refused to participate in or cover up Hutson's solicitation or acceptance of a prohibited cash gift from LAK9 to pay for the costs of the hotel rooms during the Carnival season. Hutson fired Trautenberg to stop his legitimate complaints and investigation into the

matter pursuant to his stated job responsibilities.

36.     Additionally or alternatively, as alleged throughout this complaint, Assistant Sheriff Kristen Morales, while in the course and scope of her employment duties, assaulted and battered Trautenberg in the workplace in violation of La. Rev. Stat. Ann. §§ 14:38 (simple assault) and 14:35 (simple battery).  Hutson fired Trautenberg because he disclosed, objected to, and refused to participate in or cover up the workplace assault and battery, for the purpose of protecting Morales.

37.     Accordingly, Hutson, in her official capacity as Trautenberg's employer, owes him all damages arising from his illegal termination, including his lost back wages, lost future wages or reinstatement, general damages, economic damages, attorney's fees, litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled.

**Count 2:     Disparate-treatment Discrimination Because of Sex under the Fourteenth Amendment through Section 1983 against Sheriff Hutson in Her Official Capacity**

38.     Additionally or in the alternative to all other causes of action in this complaint, David H. Trautenberg states a cause of action for disparate-treatment discrimination because of his sex, against Sheriff Hutson in her official capacity under the Fourteenth Amendment of the United States Constitution, through 42 U.S.C. § 1983, based on the following adverse employment actions:

(a)     Hutson's termination of Trautenberg's employment because of his sex on or about March 27, 2023.

39.     "Sex discrimination . . . in public employment violate[s] the Equal Protection

Clause of the Fourteenth Amendment." *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997).  A cause of action for deprivation of Fourteenth Amendment rights by a state actor must be brought pursuant to Section 1983. *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980).  A municipal employer, like a Louisiana sheriff, is subject to liability under Section 1983 upon proof of "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) *citing Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978).

40.    Plaintiff reincorporates here all the factual and legal allegations of his complaint.

41.    Susan Hutson is the final policymaker, decision-maker, and appointing authority for all employment and termination decisions affecting her subordinate employees. Hutson fired Trautenberg. She fired him because he is a man.  Hutson would not have fired Trautenberg if he were a woman.  Hutson's policy and decision-making was the moving force of Trautenberg's termination.

42.    Trautenberg was objectively well qualified for his job.  Hutson had no cause to terminate him. Hutson admitted on the day of their termination meeting that Trautenberg had done excellent work for her and her administration.   Hutson provided no explanation for her termination decision.  Hutson replaced Trautenberg concerning his former finance work and responsibilities with his subordinate, an objectively lesser qualified woman named Elizabeth Boyer.  Trautenberg, based on his eyewitness observations, alleges Hutson holds and displays bias against men in

the workplace in favor of women in the workplace.  Hutson's policymaking and decision-making in this regard is inexplicable and was the moving force of Trautenberg's illegal termination.

43.    Accordingly, Hutson, in her official capacity as Trautenberg's employer, owes him all damages arising from his illegal termination, including his lost back wages, lost future wages or reinstatement, general damages, economic damages, attorney's fees, litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled.

**Count 3:    Disparate-treatment Discrimination Because of Sex under the Fourteenth Amendment through Section 1983 against Sheriff Hutson in Her Individual Capacity**

44.    Additionally or in the alternative to all other causes of action in this complaint, David H. Trautenberg states a cause of action for disparate-treatment discrimination because of his sex, against Sheriff Hutson in her individual capacity under the Fourteenth Amendment, through 42 U.S.C. § 1983, based on the following adverse employment actions:

(a)    Hutson's termination of Trautenberg's employment because of his sex on March 27, 2023.

45.    A public employee's decision-maker is liable for a violation of the Fourteenth Amendment through Section 1983 upon proof she intentionally discriminated against the public-employee plaintiff because of his sex.  An individual defendant is liable for punitive damages upon proof she acted maliciously.  *In re Selcraig*, 705 F.2d 789, 797 (5th Cir. 1983) (so holding).

46.   Plaintiff reincorporates here all the factual and legal allegations of his complaint.

47.   Hutson fired Trautenberg. She fired him because he is a man.  Hutson would not have fired Trautenberg if he were a woman.

48.   Trautenberg was objectively well qualified for his job.  Hutson had no cause to terminate him. Hutson admitted on the day of their termination meeting that Trautenberg had done excellent work for her and her administration.   Hutson provided no explanation for her termination decision.  Hutson replaced Trautenberg concerning his former finance work and responsibilities with his subordinate, an objectively lesser qualified woman named Elizabeth Boyer.  Trautenberg, based on his eyewitness observations, alleges Hutson holds and displays bias against men in the workplace in favor of women in the workplace.  Hutson's policymaking and decision-making in this regard is inexplicable and was the moving force of Trautenberg's illegal termination.

49.   Hutson is a trained attorney. Hutson knows that a public employer may not fire a public employee because of his sex. Hutson fired Trautenberg maliciously and in reckless disregard of his federally protected rights.

50.   Accordingly, Hutson, in her individual capacity, owes Trautenberg all damages arising from his illegal termination, including punitive damages, his lost back wages, lost future wages or reinstatement, general damages, economic damages, attorney's fees, litigation costs, judicial interest, and all other legal and equitable relief to which he is entitled.

## JURY DEMAND

Trautenberg requests a trial by jury on all issues and causes of action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff David. H. Trautenberg prays that this complaint be deemed good and sufficient; that it and summons be served upon defendant Susan Hutson both in her official and individual capacities; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant:

1. Entering declaratory judgment in favor of plaintiff and against defendant in both her official and individual capacities, declaring that the practices complained of in this complaint are unlawful under federal law and Louisiana state law, and defendant did willfully, maliciously, or recklessly as the case may be violate the rights of plaintiff as alleged and proven.

2. Under Louisiana state law, La. Rev. Stat. Ann. § 23:967 *et seq.*, awarding plaintiff all damages and equitable relief due against defendant in her official capacity, including but not limited to plaintiff's lost back wages, lost front wages or reinstatement, general damages, economic damages, reasonable attorney's fees and costs, judicial interest, and compensation for any negative tax consequences because of a favorable judgment.

3. Under the Fourteenth Amendment (sex discrimination) through 42 U.S.C. § 1983, awarding plaintiff all damages and equitable relief due against defendant in both her official and individual capacities, including but not limited to plaintiff's lost back wages, lost front wages or reinstatement, general damages, economic damages, punitive damages (solely against defendant in her individual capacity), reasonable attorney's fees and costs, judicial interest, and compensation for any negative tax consequences because of a favorable judgment.

4. Awarding Trautenberg all other legal or equitable relief to which he is entitled against defendant in both her official and individual capacities.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
428 W. 21st Ave. / Covington, LA 70433
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for David H. Trautenberg*

**Clerk of court: please hold issuance of summons pending attempted waiver**

DocuSign Envelope ID: 42BCED9F-C60E-421A-A6D2-31F1E1923463

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID H. TRAUTENBERG

        Plaintiff,

    v.

SUSAN HUTSON, SHERIFF, ORLEANS
PARISH

        Defendant.

CIVIL NO. PENDING

## <u>DECLARATION OF DAVID H. TRAUTENBERG</u>

I, David H. Trautenberg, am 65 years old, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts and true and correct to the best of my knowledge and recollection:

1.    I am the named plaintiff in the lawsuit *David H. Trautenberg v. Susan Hutson, Sheriff, Orleans Parish*, soon to be filed in the United States District Court for the Eastern District of Louisiana.

2.    After reviewing the entire document, I authorized and instructed my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3.    I verify that, at the time of its filing, each of the factual allegations of the Complaint was true and correct to the best of my knowledge and recollection.

Executed by me on <u>  10/25/2023  </u>

DocuSigned by:

A00F292ED1B843E...

David H. Trautenberg